## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DECANDA MICHELLE FAULK, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No.: 5:25-cv-03030-JMG |
| | : | |
| LEHIGH VALLEY HEALTH NETWORK *et al*, | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

**Gallagher, J.**                                                    **February 25, 2026**

Plaintiff Michelle Faulk ("Plaintiff" or "Ms. Faulk") alleges that Defendants Lehigh Valley Health Network ("LVHN"), Lehigh Valley Hospital – Cedar Crest (collectively the "Corporate Defendants"), Brian Nester, Annette White, Lynn K. Turner, Stephanie Jones, Heather Cardona, Amber Kraus, Chantal Branco, Jodi Koch, Jennifer Rodriguez, and John and Jane Does 1-20 (collectively the "Individual Defendants") violated her rights under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), the Pennsylvania Human Relations Act ("PHRA"), and the Pennsylvania Whistleblower Law ("PWL"). Plaintiff alleges race and age discrimination, retaliation, hostile work environment, and whistleblower retaliation against the Corporate Defendants, and aiding and abetting and related claims under the PHRA against the Individual Defendants. Corporate Defendants and Individual Defendants (collectively the "Defendants") move to dismiss the Complaint. For the reasons set forth below, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND[1]

Plaintiff is an African American woman. She began her employment with Defendants in or before early 2022 and entered clinical orientation shortly thereafter. ECF No. 29 ¶¶ 39–46, 134. Throughout her employment, Ms. Faulk alleges she performed her job competently, received positive feedback, and had no disciplinary history until she began reporting discrimination and related misconduct. *Id.* ¶¶ 32, 56. Ms. Faulk alleges that, during her clinical orientation, she was subjected to discriminatory treatment, harassment, and heightened scrutiny by supervisors and coworkers based on her race, color, hair texture, hairstyles, age, and temporary disabilities. *Id.* ¶¶ 31, 34, 39–48. She also contends that similarly situated white received more favorable treatment, were not subjected to comparable scrutiny, and were supported during orientation and beyond. *Id.* ¶¶ 41, 48, 50–54.

Plaintiff alleges that the wrongdoing at issue involved several supervisors, human-resources, executive, and clinical personnel. *Id.* ¶¶ 33-34, 38, 58–60. She contends that Amber Kraus, Director of the Interventional Progressive Care Unit and her direct manager, and Chantal Branco, Nursing Administrator/Director of Patient Care Services, participated in or failed to correct discriminatory and retaliatory conduct. *Id.* at ¶ 33. Heather Cardona, the Human Resources Representative initially assigned to her complaints, and later Stephanie Jones, Senior Human Resources Consultant, allegedly mishandled or perpetuated the inadequate response to her protected activity. *Id.* Plaintiff further asserts that she informed Brian Nester, President and Chief Executive Officer, and Annette White, Senior Vice President and Chief Legal Officer, of her concerns, yet they failed to intervene or ensure a proper investigation. *Id.* Finally, Jennifer Rodriquez, a Patient Care Specialist and Nurse Educator in the Interventional Progressive Care

---

[1] The Court accepts Plaintiffs' factual allegations as true, as we must at this early stage.

Unit, allegedly conducted a flawed investigation into the IV pump incident and concluded—incorrectly, according to Plaintiff—that she falsified medical documentation, a finding relied upon to justify her termination. *Id.*

Plaintiff contends that, rather than addressing her concerns, Defendants dismissed or minimized them, and the discriminatory conduct escalated after each report. *Id.* ¶¶ 34, 36–38. Additionally, Ms. Faulk alleges that after engaging in protected activity, including reporting discrimination, requesting reasonable accommodations, pursuing workers' compensation and FMLA leave, and submitting a memorandum to senior leadership, she was subjected to retaliation, suspended, and ultimately terminated under a pretextual justification. *Id.* ¶¶ 56–57, 60–62. Ms. Faulk claims that Defendants later characterized the termination as a resignation, which Ms. Faulk alleges was false and fabricated. *Id.* ¶¶ 33, 34(m), 57. As a result of Defendants' alleged conduct, Ms. Faulk asserts that she suffered economic loss, loss of employment and earning capacity, and significant emotional distress. *Id.* ¶ 114.

Ms. Faulk commenced this action on June 12, 2025, by filing a Complaint against the Corporate Defendants and the Individual Defendants, bringing claims under federal and state anti-discrimination and retaliation statutes. ECF No. 1. On July 29, 2025, she filed an Amended Complaint naming LVHN and the Individual Defendants. ECF No. 8. Her counsel was then granted leave to withdraw on September 30, 2025. ECF No. 26. Proceeding *pro se*, Ms. Faulk filed a Second Amended Complaint on October 30, 2025. ECF No. 29. Defendants moved to dismiss the Complaint on November 14, 2025. ECF No. 35. Plaintiff filed a response on

November 27, 2025. ECF No. 36.[2] On December 8, 2025, the Court granted Defendants leave to file a reply, which was subsequently filed on the same date. ECF Nos. 39–40.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

## III.    DISCUSSION

### a.    The Claims Against Lynn Turner are Dismissed for Lack of Service

Under Federal Rule of Civil Procedure 4(m), a plaintiff must serve the summons and complaint on each named defendant within 90 days of filing the complaint. Fed. R. Civ. P. 4(m).

---

[2] Plaintiff is reminded that her filings must abide by this Court's policies and procedures, which would cap Plaintiff's response brief at twenty pages.

If service is not completed within this timeframe, the court "must dismiss the action without prejudice or order that service be made within a specified time," either on motion or on its own after providing notice to the plaintiff. *Id.* However, if the plaintiff shows good cause for the delay, the court is required to grant an extension of time for service for a period it considers appropriate. *Id.*

Here, Plaintiff alleges that "[Mr. Hoffman] advised Ms. Faulk that [Ms. Turner] was never served for reasons unbeknownst to Ms. Faulk" and that the "failure to serve Lynn K. Turner shall fall squarely on Mr. Hoffman and Ms. Faulk's former attorney, David Deretzian, Esq., for previously failing to effect service of process on her for whatsoever reason." ECF No. 29 ¶ 7. Yet Plaintiff was aware before filing the Second Amended Complaint that Ms. Turner had not been served, as she expressly acknowledged in that pleading. *See id.* After electing to proceed *pro se*, Plaintiff could have effected service of the Second Amended Complaint herself but did not do so. Nor does Plaintiff demonstrate good cause for the delay; in her opposition, she states only that she "defers to the Court to address Turner under Plaintiff's Amended Complaint." *Id.*

Accordingly, the Court will dismiss the action against Lynn K. Turner without prejudice pursuant to Rule 4(m).

### b.  Plaintiff's Pennsylvania Whistleblower Claim is Dismissed (Count V)

Pursuant to the Pennsylvania Whistleblower Claim ("PWL") all actions must be filed within one hundred and eighty (180) days of the alleged retaliatory action, and the Court has no discretion to extend it. *See Boyer v. City of Philadelphia*, 2017 WL 3023585, at *6 (E.D. Pa. July 17, 2017); *see also O'Rourke v. Pennsylvania Dep't of Corr.*, 730 A.2d 1039, 1042 (Pa. Cmwlth. Ct. 1999). As Plaintiff was terminated on or about November 14, 2023, she was required to assert

her claim under the PWL by May 25, 2024. ECF No. 29 ¶ 101. Plaintiff initiated her action on June 12, 2025. ECF No. 1. More than 180 days have elapsed, and Plaintiff has failed to advance any argument to excuse or toll that requirement. Thus, the Court dismisses Plaintiff's Pennsylvania Whistleblower Claim with prejudice.

### c. Plaintiff's Claims Under the Pennsylvania Human Relations Act are Dismissed (Count II)

Plaintiff asserts claims for aider and abettor liability under the PHRA, alleging that the individual Defendants aided and abetted discrimination and retaliation in violation of the PHRA.[3] The PHRA forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice...." 43 Pa. Cons. Stat. Ann. § 955(e). An individual who works for the same employer as the plaintiff may be held liable under 43 Pa. Cons. Stat. Ann. § 955(e) for aiding and abetting a violation of the PHRA, provided that the individual exercised **_supervisory authority_** over the plaintiff. *See Wirtz v. Unisys Corp.,* No. CV 20-6401, 2022 WL 970843, at *4 (E.D. Pa. Mar. 30, 2022) (emphasis added). There is, however, no individual liability for aiding and abetting under the PHRA for non-supervisory employees. *See id.*

"Pennsylvania law does not define who is a 'supervisor' for the purpose of the PHRA, so it is appropriate to look to Title VII for guidance." *Id.* (citations omitted). The Supreme Court has held that "an employee is a 'supervisor' for purposes of ... Title VII if he or she is empowered by

---

[3] Plaintiff does not assert individual liability under Title VII and the ADEA in Counts III, IV, and VII. However, even if she did, neither statute provides for individual liability. *See Parikh v. UPS*, 491 F. App'x 303, 308 (3d Cir. 2012) ("Neither Title VII nor the ADEA provides for individual liability.").

the employer to take tangible employment actions against the victim." *Id.* (citing *Vance v. Ball State Univ.*, 570 U.S. 421 (2013)). The Supreme Court defined "tangible employment action" as "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Wirtz*, 2022 WL 970843, at *4 (quoting *Vance*, 570 U.S. at 429, 431). "Mere conclusory and non-specific allegations of aiding and abetting are insufficient to survive a motion to dismiss." *Jeannot v. Phila. Hous. Auth.*, 356 F. Supp. 3d 440, 449 (E.D. Pa. 2018).

### i. PHRA Claims Against Dr. Brian Nester and Annette White, Esq. are Dismissed

Plaintiff alleges that Dr. Brian Nester, the President and Chief Executive Officer ("CEO"), and Annette White, the Chief Legal Officer, received her protected memorandum. ECF No. 29 ¶ 33. Although Plaintiff characterizes these individuals as having "supervisory authority" in conclusory fashion, *id.* ¶ 6, the Second Amended Complaint does not allege that either Dr. Nester or Ms. White personally participated in, directed, approved, or ratified the tangible employment actions taken against Plaintiff. Nor does Plaintiff plead facts demonstrating that either individual exercised authority to hire, fire, discipline, or otherwise effect a significant change in her employment status.

Because the Complaint does not allege facts plausibly showing that Dr. Nester or Ms. White were empowered to take tangible employment actions against Plaintiff, or that they aided or abetted such actions.

Accordingly, Defendants' Motion to Dismiss Count II as to Dr. Nester and Ms. White is hereby granted without prejudice. Plaintiff may file an amended complaint consistent with this opinion.[4]

### ii.   PHRA Claims Against Amber Kraus are Not Dismissed

By contrast, Plaintiff plausibly alleges that Amber Kraus possessed and exercised supervisory authority over her employment. The Second Amended Complaint identifies Ms. Kraus as Plaintiff's manager and alleges that she participated in "check-in" meetings, disciplinary actions, and the events culminating in Plaintiff's termination. *Id.* ¶¶ 6, 33, 34, 40, 49.

Plaintiff further pleads specific factual allegations demonstrating that Ms. Kraus dismissed complaints of discrimination, failed to intervene in ongoing harassment, coerced Plaintiff to alter documentation, and participated in the disciplinary process that resulted in termination. *Id.* ¶ 34. Participation in discipline and termination constitutes involvement in tangible employment actions under *Vance*. These allegations move beyond conclusory assertions and plausibly establish that Ms. Kraus aided and abetted the employer's allegedly discriminatory and retaliatory conduct.

Thus, the motion to dismiss Count II as to Ms. Kraus is denied.

### iii.   PHRA Claims Against Heather Cardona are Not Dismissed

Plaintiff also alleges that Heather Cardona, a Human Resources representative, participated in disciplinary measures culminating in Plaintiff's termination. *Id.* ¶¶ 33–34. While Human Resources status alone would not establish supervisory authority under *Vance*, Plaintiff

---

[4]  Although Plaintiff is proceeding *pro se*, she remains a licensed attorney in both New York and New Jersey. The Third Circuit has emphasized that the usual leniency afforded to pro se litigants ***does not*** apply to attorneys representing themselves. *See Berk v. Rothman Inst. Orthopedic Found.,* 2025 WL 1177253, at *2 (3d Cir. Apr. 23, 2025). Plaintiff is reminded that any amended complaint must comply with the "short and plain statement" requirement that Rule 8 demands.

alleges that Ms. Cardona was involved in processes affecting Plaintiff's employment status and participated in or approved actions leading to termination. *Id.*

At the pleading stage, Plaintiff's allegations that Ms. Cardona participated in the disciplinary process culminating in termination are sufficient to plausibly allege knowing participation in a tangible employment action.

Accepting the allegations as true, Plaintiff has plausibly alleged that Ms. Cardona knowingly participated in the conduct resulting in termination. Accordingly, the Motion to Dismiss Count II as to Ms. Cardona is denied.

#### iv.    PHRA Claims Against Jennifer Rodriguez are Not Dismissed

Plaintiff alleges that Jennifer Rodriguez, a Nurse Educator, conducted the investigation into the IV Pump incident that formed the basis of Plaintiff's termination and participated in "check-in" meetings and the PIP process. *Id.* ¶¶ 33, 34(r), 40, 49. The Complaint alleges that Ms. Rodriguez conducted a sham investigation that formed the basis of Plaintiff's termination. Accepting that allegation as true, it plausibly supports an inference that she knowingly participated in the disciplinary mechanism culminating in a tangible employment action.

At this stage, the facts alleged are sufficient to state a claim for aiding and abetting under § 955(e). The Motion to Dismiss Count II as to Ms. Rodriguez is denied.

#### v.    PHRA Chantal Branco, Jodi Koch, and Stepanie Jones are Dismissed

Even accepting the Second Amended Complaint's allegations as true, Plaintiff fails to state a plausible PHRA aiding-and-abetting claim against Defendants Chantal Branco, Jodi Koch, and Stephanie Jones. The PHRA permits individual liability only where a co-employee with supervisory authority aids or abets discrimination by exercising authority to take tangible employment actions against the plaintiff. *Wirtz*, 2022 WL 970843, at *4. The Second Amended

Complaint does not plausibly allege that Ms. Branco, Ms. Koch, or Ms. Jones possessed such authority. Instead, Plaintiff alleges only that Chantal Branco served as a Nursing Administrator/Director of Patient Care Services, Stephanie Jones served as a Senior Human Resources Consultant assigned to handle Plaintiff's complaints, and Jodi Koch participated in a Fair Treatment process related to Plaintiff's termination. ECF No. 29 ¶ 33.

The Second Amended Complaint further groups these defendants together with other "Individual Defendants" in generalized allegations of aiding and abetting, without identifying specific discriminatory acts taken by these defendants or facts showing they had authority to hire, fire, discipline, promote, reassign, or otherwise effect a significant change in Plaintiff's employment status. *Id.* ¶¶ 6, 33, 69–71. Such conclusory allegations are insufficient to establish supervisory liability under the PHRA or to state a claim for aiding and abetting.

Accordingly, Defendants' Motion to Dismiss Count II as to Ms. Branco, Ms. Koch, and Ms. Jones is granted without prejudice, and Plaintiff may file an amended complaint consistent with this Opinion.

>    **d.    Plaintiff's Race Discrimination Claims Against the Corporate Defendants Under Title VII and the PHRA are Dismissed (Count I)**

To establish a prima facie case of discrimination under Title VII, a plaintiff must show that: "(1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) similarly situated individuals were treated more favorably, or the adverse employment action occurred under circumstances which give to an inference of discrimination." *Johnson v. Sch. Dist. of Phila.*, No. CV 23-3430, 2024 WL 1773358, at *5 (E.D. Pa. Apr. 24, 2024).

Here, Plaintiff does not allege that any similarly situated employee outside her protected class was treated more favorably. Nor does she plead facts sufficient to support an inference that the adverse employment action occurred under circumstances suggesting discriminatory intent.

"When a plaintiff bases the inference of discrimination on allegations that she was subjected to racially offensive comments in the workplace, to survive a motion to dismiss, the plaintiff's complaint should describe with particularity the comments made, indicate who made the comments and when, and show that the defendant knowingly allowed the comments to occur." *Johnson*, 2024 WL 1773358, at *5 (citing *Grasty v. World Flavors, Inc.*, Civ. No. 11-1778, 2011 WL 3515864, at *6 (E.D. Pa. Aug. 11, 2011)).

Plaintiff identifies only individuals as "White Nurse #_," without providing specific information regarding their roles, responsibilities, or the timing of the alleged statements. These generalized allegations do not permit the Court to determine whether the individuals are appropriate comparators or whether the comments plausibly support an inference of discriminatory intent. Plaintiff also fails to allege facts linking the alleged adverse employment action to her race. Without such a connection, the Court cannot reasonably infer intentional discrimination.

Accordingly, Plaintiff's Title VII discrimination claim is dismissed without prejudice, as it is not apparent at this stage whether the deficiencies could be cured by more specific factual allegations. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("Federal Rule of Civil Procedure 15(a) provides that 'leave [to amend] shall be freely given when justice so requires.'... Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.").

**e. Plaintiff Sufficiently Alleges a Hostile Work Environment Claim Against the Corporate Defendants (Count III)**

Hostile work environment claims under Title VII and the PHRA are analyzed coextensively. *See Anderson v. Boeing Co.*, 694 F. App'x 84, 89 n.13 (3d Cir. 2017); *see also Capps v. Mondelez Global*, LLC, 847 F.3d 144, 150 n.1 (3d Cir. 2017). To state a claim for hostile work environment, a plaintiff must show "(1) the employee suffered intentional discrimination because of his/her [race], (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of respondeat superior liability." *Johnson*, 2024 WL 1773358, at *4 (citing *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017)) (alterations in original).

**i. Severe and Pervasive Conduct**

"For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racist slurs, there must be a steady barrage of opprobrious racial comments." *Johnson*, 2024 WL 1773358, at *4 (citing *Tourtellotte v. Eli Lilly & Co.*, Civ. No. 09-774, 2013 WL 1628603, at *8 (E.D. Pa. Apr. 16, 2013)).

Defendants argue that the alleged conduct was not "severe or pervasive," asserting that "a single 'Aunt Jemima' comparison and hair-related questions, plus scheduling complaints attributed to unnamed 'white nurses' do not rise to the level of a hostile work environment." ECF No. 35-1 at 14. The Court disagrees. Plaintiff alleges that White Nurse #1 stated, "you know – your history – our differences – *you slave, me master* – so stop acting like you are above doing certain things – it could always be worse for you," and that White Nurse #4 referred to Plaintiff and another non-white nurse as "two *spooks* in a pod." ECF No. 29 at ¶¶ 55, 75(d) (emphasis

added). Courts have recognized that the use of a racial epithet may be sufficiently severe to satisfy the severe or pervasive requirement. *See Castleberry*, 863 F.3d at 265. Given the severely harmful nature of such slurs, this Court agrees. At the pleading stage, Plaintiff's allegations plausibly satisfy the second element.

### ii. Respondeat Superior

The Third Circuit has held that "[w]hen the hostile work environment is created by [] non-supervisory coworkers, the employer is not automatically liable. Rather, employer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted).

Plaintiff alleges that she informed her direct manager, Amber Kraus, of discriminatory conduct involving several "White Nurses," yet Ms. Kraus failed to take any action. ECF No. 29 at ¶ 75(e). Plaintiff further alleges that Ms. Kraus dismissed her concerns, stating that "no one on the unit is racist – they are just a close-knit unit like you realized early on." *Id.* at ¶ 54. At this stage of litigation, and accepting these allegations as true, Plaintiff has plausibly alleged that her employer was aware of the alleged harassment and failed to take prompt and appropriate remedial action. Accordingly, Plaintiff has sufficiently pled respondeat superior liability.

Because Plaintiff has plausibly alleged each element of a hostile work environment claim, Defendants' Motion to Dismiss Count III of Plaintiff's Second Amended Complaint is denied.

### f. Plaintiff Sufficiently Alleges a Retaliation Claim Against the Corporate Defendants (Count IV)

"To establish a prima facie case of retaliation under Title VII and the PHRA, a plaintiff must show that: (1) [she] engaged in activity protected by Title VII; (2) the employer took an

adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Maldonado v. City of Allentown*, 803 F. Supp. 3d 329, 335 (E.D. Pa. 2025) (citations omitted). A plaintiff can show causation through "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory activity; (2) a pattern of antagonism coupled with timing; or (3) that from the evidence gleaned from the record as a whole the trier of fact should infer causation." *Zielinski v. Whitehall Manor, Inc.*, 899 F. Supp. 2d 344, 355 (E.D. Pa. 2012) (citations omitted).

Under the first element, a report to a superior constitutes protected activity when it explicitly raises concerns of discrimination, whether verbally or in writing. See *Maldonado*, 803 F. Supp. 3d at 336. Here, this element is satisfied: Plaintiff alleges that on September 25, 2023, she submitted a memorandum ("the Memo") to senior management describing the "discrimination [and] bullying . . ." she endured. ECF No. 29 ¶ 86.

For the second element, a plaintiff must establish that the alleged retaliatory actions were materially adverse, meaning they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Maldonado*, 803 F. Supp. 3d at 336 (citation omitted). Plaintiff satisfies this element as well, as she was terminated.

The central question is whether Plaintiff satisfies the third element—establishing a causal connection between her protected activity and the adverse employment action—and the Court concludes that she does. Although the approximately seven-week period between Plaintiff's September memorandum and her termination is not, by itself, unusually suggestive, Plaintiff has alleged a causal nexus through a continuing pattern of antagonism. This pattern included

14

repeated and escalating allegations against her patient care—despite no prior complaints—after she submitted the Memo. *See* ECF No. 29 ¶¶ 93–100.

For example, after Plaintiff submitted the Memo, Plaintiff was repeatedly called into Ms. Kraus's office after each shift to learn of complaints about her attendance and alleged tardiness dating back to 2022, even though her absences were approved and her ID badge was not functioning properly. *Id.* ¶ 94. Plaintiff was also accused of "not having a patient on the Telemetry monitor for eight (8) hours or more" and was written up, despite her documentation showing the patient was properly monitored and her requests for an investigation were ignored. *Id.* ¶¶ 95–96. Other nurses involved in similar incidents were "not written up or accused of any wrongdoing." *Id.* ¶ 96. These incidents continued throughout her shifts, culminating in her suspension on November 5/6, 2023, pending investigation of an alleged Heparin drip incident. *Id.* ¶ 100.

Together, these allegations demonstrate a sustained pattern of retaliatory antagonism, establishing a causal connection between Plaintiff's protected activity and her termination. *See Maldonado*, 803 F. Supp. 3d at 336 (finding a causal nexus through a pattern of antagonism, including multiple written disciplines for performing "extra work for other employees," conduct for which he had never previously been disciplined); *see also Robinson v. Se. Pennsylvania Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 894 (3d Cir. 1993) (holding that causation can be established through a "pattern of antagonism" such as a "constant barrage of written and verbal warnings ... and disciplinary action[s] ... soon after plaintiff's initial complaints").

For these reasons, Defendants' Motion to Dismiss Count IV of Plaintiff's Second Amended Complaint is denied.

g.  **Plaintiff's Age Discrimination Claim Fails and is Dismissed (Count VII)**

A claim of age discrimination under the ADEA survives a Rule 12(b)(6) motion to dismiss if the plaintiff "make[s] factual allegations that, if true, would either (1) establish [her] prima facie case […] or (2) show that age was the 'but-for' cause of the challenged adverse employment action." *Sorgini v. Wissahickon Sch. Dist.*, 274 F. Supp. 3d 291, 297 (E.D. Pa. 2017) (citing *Johnson v. Del. Cnty. Juv. Det. Ctr.*, No. 11-CV-1166, 2012 WL 895507, at *7 (E.D. Pa. Mar. 6, 2012)). Accordingly, if a plaintiff sufficiently alleges the elements of a prima facie case under the first step of *McDonnell Douglas*, "the plaintiff will survive a motion to dismiss, and no further inquiry under *McDonnell Douglas* is required." *Sorgini,* 274 F. Supp. 3d at 297.

To establish a prima facie case under the ADEA, a plaintiff must show: (1) she is forty years of age or older; (2) the defendant took an adverse employment action; (3) she was qualified for the position; and (4) the circumstances of the adverse action give rise to an inference of unlawful discrimination. *See Giuliani v. Polysciences, Inc.*, 275 F. Supp. 3d 564, 575 (E.D. Pa. 2017). As the Third Circuit has articulated, the key inquiry is whether the adverse action was taken ***because of*** the plaintiff's age. *See Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (emphasis added). The fourth element may be satisfied by showing that the plaintiff was replaced by a substantially younger employee or by alleging facts that, if unexplained, are more likely than not based on impermissible factors. *Gardner v. Ulta Salon Cosms. & Fragrance Inc.*, No. 22-2785, 2024 WL 1110384, at *1 (3d Cir. Mar. 14, 2024); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action, after which the burden

returns to the plaintiff to show that the explanation is pretextual. *See Gardner,* 2024 WL 1110384, at *1.

Here, Plaintiff has not stated a viable age discrimination claim. The Second Amended Complaint contains no allegation of Plaintiff's age, leaving the Court unable to determine whether she is forty or older, and therefore fails to satisfy the first element. The Second Amended Complaint also does not allege that Plaintiff was replaced by a substantially younger employee or that younger employees were treated more favorably, and thus fails to satisfy the fourth element. The only age-related allegations are that coworkers referred to Plaintiff as "slow," "old," or an "old lady," commented that her "age shows," or questioned her "stamina" "at [her] age." ECF No. 29 ¶¶ 182–89. Standing alone, these statements do not support a reasonable inference of age-based discrimination.

Accordingly, Plaintiff's age discrimination claim is dismissed without prejudice, as it is unclear whether additional factual detail could cure these deficiencies. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1434 ("Federal Rule of Civil Procedure 15(a) provides that 'leave [to amend] shall be freely given when justice so requires.' ... Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.").

### h. Plaintiff's Worker Compensation Retaliation and FMLA Claims Fail as a Matter of Law

Plaintiff's Worker Compensation Retaliation and FMLA Claims are not raised in Plaintiff's Second Amended Complaint and instead are raised for the first time in Plaintiff's opposition to the Motion to Dismiss. Plaintiff may not amend her complaint through her opposition brief, and these new facts may not be considered by the Court on the instant Motion to Dismiss. *See Griffin v. State Farm Mut. Auto. Ins. Co.*, No. CV 25-1682, 2025 WL 1208930, at *5 (E.D. Pa. Apr. 25,

2025) ("It is well-settled a plaintiff may not amend her complaint through a response to a motion to dismiss.").

For these reasons, the Court will not consider Plaintiff's claims of Worker Compensation Retaliation and FMLA which were raised for the first time in her opposition to Defendant's Motion to Dismiss.

## IV.   CONCLUSION

For the foregoing reasons, Moving Defendants' Motion to Dismiss (ECF No. 35) is granted in part and denied in part. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

18