## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DECANDA MICHELLE FAULK, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No.: 5:25-cv-03030-JMG |
| | : | |
| LEHIGH VALLEY HEALTH NETWORK *et al*, | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

**Gallagher, J.**                                                                                    **July 1, 2026**

Plaintiff Decanda Michelle Faulk ("Plaintiff" or "Ms. Faulk") brings this action against Defendants Lehigh Valley Health Network ("LVHN"), Lehigh Valley Hospital–Cedar Crest (collectively, the "Corporate Defendants"), and Brian Nester, Annette White, Lynn K. Turner, Stephanie Jones, Heather Cardona, Amber Kraus, Chantal Branco, Jodi Koch, Jennifer Rodriguez, and John and Jane Does 1–20 (collectively, the "Individual Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Pennsylvania Human Relations Act ("PHRA"). ECF No. 48; ECF Nos. 44–45. Following the Court's February 25, 2026, Memorandum Opinion and Order, Plaintiff filed a Third Amended Complaint ("TAC") seeking to supplement the allegations contained in her Second Amended Complaint ("SAC") and to cure deficiencies identified by the Court. ECF No. 48 at 1–2. Defendants now move to dismiss the TAC pursuant to Federal Rules of Civil Procedure 8, 12(b)(6), and 15. ECF No. 49. For the reasons that follow, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

Plaintiff, an African American woman, was employed by the Corporate Defendants as a registered nurse from approximately April 2022 until the termination of her employment in November 2023. ECF No. 29 ¶¶ 1, 31; ECF No. 48 ¶¶ 2–3. Plaintiff claims that she performed her duties satisfactorily, received positive feedback regarding her performance, and had no disciplinary history prior to the events giving rise to this litigation. ECF No. 29 ¶ 32.

According to Plaintiff, she was subjected throughout her employment to discriminatory treatment, harassment, heightened scrutiny, and disparate treatment because of her race and age. ECF No. 29 ¶¶ 31, 34, 39–48, 182–89. Plaintiff contends that White employees were treated more favorably and were not subjected to the same level of scrutiny or discipline. *Id.* ¶¶ 41, 48, 50–54; ECF No. 48 ¶¶ 22–29. Plaintiff further contends that she repeatedly reported discrimination, harassment, and related workplace concerns to supervisors, human-resources personnel, and senior leadership, but that her complaints were ignored, inadequately investigated, or otherwise dismissed. ECF No. 29 ¶¶ 33–38, 56–60, 86–89.

Plaintiff also asserts that after engaging in protected activity—including reporting discrimination, requesting accommodations, pursuing workers' compensation and leave-related benefits, and submitting a memorandum to senior leadership outlining her concerns—she experienced escalating retaliation. ECF No. 29 ¶¶ 56–62; ECF No. 48 ¶¶ 31–57. According to Plaintiff, the alleged retaliation included increased monitoring of her work, heightened scrutiny of her performance, disciplinary action, and other adverse treatment. ECF No. 48 ¶¶ 23–25, 31–57.

The allegations that culminated in Plaintiff's termination arose from an investigation into an intravenous pump incident and related medical documentation. ECF No. 29 ¶¶ 33, 34(r), 100–

01. Plaintiff alleges that Defendants concluded she had falsified medical records and relied upon that determination in terminating her employment on or about November 14, 2023. *Id.* ¶¶ 100–01. Plaintiff disputes the findings of the investigation and contends that the stated reason for her termination was pretextual and motivated by unlawful discrimination and retaliation. *Id.* ¶¶ 101–05; ECF No. 48 ¶¶ 24–29, 49–57.

In her Third Amended Complaint ("TAC"), Plaintiff supplements her prior allegations with additional factual assertions intended to address deficiencies identified in the Court's February 25, 2026, Memorandum Opinion. *See* ECF No. 48 at 1–2. Specifically, Plaintiff maintains that less experienced White nurses were described as superior nurses despite her greater clinical experience, that White employees were not disciplined for comparable medication or documentation-related issues, that White nurses were permitted to correct one another's mistakes without reporting them, and that Plaintiff was subjected to surveillance and disciplinary scrutiny not imposed on White coworkers. *Id.* ¶¶ 11, 18–29. Plaintiff contends that these allegations further support her claims of race discrimination and retaliation. *Id.*

Plaintiff commenced this action on June 12, 2025. ECF No. 1. On October 30, 2025, Plaintiff filed the Second Amended Complaint ("SAC") after proceeding *pro se* following the withdrawal of counsel. ECF Nos. 26, 29. Defendants moved to dismiss the SAC. ECF No. 49. On February 25, 2026, the Court granted the Motion in part and denied it in part, dismissing certain claims without prejudice, dismissing other claims with prejudice, and granting Plaintiff leave to amend. ECF Nos. 44–45. Specifically, Plaintiff's PHRA aiding-and-abetting claims (Count II) against Amber Kraus, Heather Cardona, and Jennifer Rodriguez remain active, as does Plaintiff's hostile work environment claim (Count III) and retaliation claims against the

Corporate Defendants (Count IV). *Id.* at 8–9, 15. Plaintiff's Pennsylvania Whistleblower Law claims were dismissed with prejudice. *Id.* at 6.

The Court also dismissed all claims against Lynn K. Turner without prejudice pursuant to Rule 4(m) after concluding that Plaintiff failed to effect service timely and failed to establish good cause warranting a further extension of time. ECF No. 44 at 4–6.

On March 11, 2026, Plaintiff filed the TAC. ECF No. 48. Defendants now move to dismiss the TAC, arguing that it fails to comply with the Federal Rules of Civil Procedure and, alternatively, fails to state claims upon which relief can be granted. ECF No. 49.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

## III.    DISCUSSION

Defendants challenge the TAC on both procedural and substantive grounds. Specifically, Defendants argue that: (a) the TAC is procedurally defective because it supplements rather than replaces the SAC; (b) Plaintiff still fails to state a race-discrimination claim; (c) Plaintiff fails to state PHRA aiding-and-abetting claims against several individual defendants; and (d) Plaintiff fails to state a claim under the ADEA. ECF No. 49. The Court addresses each issue in turn.

### a. The Third Amended Complaint Is Procedurally Defective, but Dismissal Is Not Warranted

Defendants first argue that Plaintiff's TAC should be dismissed because it does not constitute a standalone operative pleading and instead improperly attempts to supplement Plaintiff's SAC. ECF No. 49-1 at 4–7. The Court agrees that the TAC is procedurally deficient. Under Federal Rule of Civil Procedure 15, an amended complaint ordinarily supersedes the prior pleading and becomes the operative complaint in the action. *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013).

Here, Plaintiff expressly states that the TAC is an "Addendum" to the SAC and "incorporates in its entirety" the relevant provisions of the SAC except those counts previously dismissed with prejudice. ECF No. 48 at 1–2. Consequently, determining the full scope of Plaintiff's allegations requires reference to multiple pleadings. This approach is inconsistent with Rule 15 and the ordinary requirement that an amended pleading stand on its own. Although the Court granted Plaintiff leave to amend in its February 25, 2026, Memorandum Opinion, Plaintiff elected to file the TAC as an addendum to the SAC rather than as a standalone pleading. ECF Nos. 44, 48 at 1–2.

Nevertheless, dismissal is not warranted solely on that basis. The Federal Rules embody a strong preference for resolving disputes on their merits rather than on technical pleading defects. *See Garrett v. Wexford Health,* 938 F.3d 69, 92 (3d Cir. 2019*); W. Run Student Hous. Assocs.,*

5

*LLC*, 712 F.3d at 172. Consistent with that principle, courts have declined to disregard claims asserted through procedurally defective amendments where doing so would elevate a technical violation over the merits of the dispute. *See Abrams v. eResearch Tech., Inc.,* 703 F. Supp. 3d 593, 600–02 (E.D. Pa. 2023) (declining to strike allegations asserted beyond the scope of a leave-to-amend order where the defendant suffered no prejudice and enforcing the procedural defect would elevate form over substance).

The Court is not persuaded that Plaintiff's procedural error impaired Defendants' ability to understand or respond to the claims asserted for three reasons. First, Plaintiff clearly identifies the portions of the SAC she seeks to preserve. ECF No. 48 at 1–2. Second, Plaintiff identifies the additional factual allegations she seeks to add through the TAC. *Id.* Third, Defendants demonstrated their ability to understand and respond to the TAC by addressing both its procedural deficiencies and substantive allegations in the present Motion. *See* ECF No. 49-1. Indeed, Defendants' briefing reflects no uncertainty regarding the claims asserted, the allegations incorporated, or the relief sought.[1]

Under these circumstances, dismissing the action solely because Plaintiff attempted to supplement, rather than replace, her prior pleading would elevate form over substance without advancing the just, speedy, and inexpensive determination of this action. *See* Fed. R. Civ. P. 1. Despite the TAC's procedural defects, the Court declines to dismiss the action on that basis

---

[1] Although *Cooper* addressed incorporation by reference under Federal Rule of Civil Procedure 10(c), its reasoning is instructive. The court declined to strike incorporated allegations where the defendant's comprehensive motion demonstrated that it understood the nature and scope of the incorporated claims and factual allegations. *See Cooper v. Nationwide Mut. Ins. Co.*, No. 02-2138, 2002 WL 31478874, at *5–6 (E.D. Pa. Nov. 7, 2002).

alone. It will consider the allegations contained in the SAC and TAC together for purposes of the present Motion.[2]

b. **Plaintiff's Race Discrimination Claims Against the Corporate Defendants Under Title VII and the PHRA Survive Dismissal (Count I)**

In its February 25, 2026, Memorandum Opinion, the Court dismissed Plaintiff's race-discrimination claims because the SAC failed to allege sufficient facts giving rise to a plausible inference of discriminatory intent. ECF No. 44 at 10–11. In particular, Plaintiff's comparator allegations lacked specificity, and many of her assertions were mere generalizations unsupported by factual detail. *Id.*

At the pleading stage, Plaintiff need not establish a prima facie case of discrimination to survive dismissal. *Connelly,* 809 F.3d at 789. The prima facie case is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510 (2002). Rather, the Court must determine whether the complaint contains sufficient factual matter, accepted as true, to permit a reasonable inference that the adverse employment action was motivated by discriminatory intent. *See Connelly*, 809 F.3d at 786–89; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Although comparator allegations may support such an inference, a plaintiff need not demonstrate at the pleading stage that identified comparators are similarly situated in all respects. *See Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266–67 (3d Cir. 2021).

The TAC cures the aforementioned deficiencies identified in the Court's prior memorandum. First, Plaintiff now identifies specific White nurses and other employees who

---

[2] The Court's decision under these circumstances rests on the absence of prejudice and the adequacy of notice and should not be understood as endorsing amendment by addendum or incorporation-by-reference as a general practice.

allegedly committed medication or documentation errors, or engaged in comparable workplace conduct, without being subjected to the same scrutiny or discipline imposed upon Plaintiff. ECF No. 48 ¶¶ 15–29. Unlike the allegations contained in the SAC, these allegations identify the employees involved, describe the conduct at issue, and explain the allegedly different response by management. *Id.* Plaintiff further claims that White nurses routinely corrected one another's medication and documentation errors without reporting them, while Plaintiff was investigated and ultimately terminated following allegations concerning her own documentation practices. *Id.* ¶¶ 15–29. Although Defendants dispute whether these employees are sufficiently comparable to Plaintiff, that challenge goes to the weight of the comparator evidence rather than the adequacy of the pleading. *See Martinez*, 986 F.3d at 266–67.

Second, Plaintiff alleges that less experienced White nurses received praise and favorable treatment despite Plaintiff's extensive nursing and critical-care experience. *Id.* ¶¶ 11–12. These allegations provide additional context for Plaintiff's allegations that she was treated less favorably than White coworkers.

Third, the TAC contains more detailed allegations concerning race-related comments and workplace conduct. Plaintiff claims that White coworkers made derogatory comments regarding the hair, appearance, accents, and competency of nurses of color and repeatedly questioned cultural characteristics associated with those employees. *Id.* ¶¶ 4–12. Plaintiff also asserts that she reported these incidents to supervisors and management personnel on numerous occasions and that Defendants either dismissed her concerns or failed to take meaningful corrective action. *Id.* ¶¶ 24–39.

Taken together, the TAC alleges that: (1) White employees engaged in comparable workplace conduct without being subjected to the same level of scrutiny or discipline; (2)

Plaintiff was treated less favorably than certain White coworkers despite her experience and qualifications; and (3) race-related complaints were not meaningfully addressed by management. ECF No. 48 ¶¶ 4–36.

At the pleading stage, the Court must evaluate the allegations collectively rather than in isolation. *Castleberry v. STI Grp.,* 863 F.3d 259, 266–67 (3d Cir. 2017). Viewed as a whole, the TAC plausibly supports an inference that race was a factor in the differential treatment Plaintiff allegedly experienced. Accordingly, Defendants' Motion to Dismiss Count I is denied.

### c.   Plaintiff's PHRA Aiding-and-Abetting Claims Are Dismissed in Part (Count II)

The Pennsylvania Human Relations Act makes it unlawful "for any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..." 43 Pa. Cons. Stat. § 955(e). To state a claim under § 955(e), a plaintiff must plausibly allege that the defendant possessed supervisory authority and personally participated in, directed, or knowingly acquiesced in the discriminatory or retaliatory conduct at issue. *See Dici v. Commonwealth of Pa.*, 91 F.3d 542, 552–53 (3d Cir. 1996); *Wirtz v. Unisys Corp.*, No. 20-6401, 2022 WL 970843, at *4 (E.D. Pa. Mar. 30, 2022).

In its February 25, 2026, Memorandum Opinion, the Court dismissed Plaintiff's PHRA aiding-and-abetting claims against Brian Nester, Annette White, Chantal Branco, Jodi Koch, and Stephanie Jones without prejudice. ECF No. 44 at 14–18. The Court concluded that Plaintiff's allegations relied largely on supervisory status, awareness of complaints, or generalized assertions of responsibility, rather than on factual allegations demonstrating personal participation in the challenged employment actions. *Id.* The Court granted Plaintiff leave to amend those claims. *Id.*

### 1. PHRA Claims Against Brian Nester and Annette White Are Dismissed

The TAC states that Nester served as President and Chief Executive Officer of LVHN, and White served as LVHN's Chief Legal Officer. ECF No. 29 ¶ 33. Plaintiff claims that both individuals received her September 2023 memorandum concerning alleged discrimination, retaliation, and workplace misconduct. ECF No. 48 ¶¶ 36, 53, 66.

However, the TAC does not contain factual allegations demonstrating that either Nester or White personally participated in the investigation of Plaintiff's complaints, directed the disciplinary process, recommended suspension or termination, approved the challenged employment actions, attended meetings concerning Plaintiff's discipline, or otherwise exercised authority over the investigation that culminated in Plaintiff's termination.

Instead, Plaintiff's allegations continue to rest primarily on the facts that Nester and White occupied senior executive positions and were aware of Plaintiff's complaints. Awareness of alleged discrimination, without factual allegations plausibly connecting the defendant to the challenged conduct itself, is insufficient to establish aiding-and-abetting liability under § 955(e). *See Dici,* 91 F.3d at 552–53; *Wirtz,* 2022 WL 970843, at *4. Therefore, the Court dismisses Count II as to Nester and White.

### 2. PHRA Claims Against Jodi Koch Are Dismissed

Plaintiff likewise fails to state a claim against Jodi Koch. Plaintiff alleges that Koch participated in the Fair Treatment process and subsequent review proceedings concerning Plaintiff's employment status. ECF No. 48 ¶¶ 164–175. Plaintiff further alleges that Koch participated in discussions relating to the characterization of Plaintiff's separation from employment.

10

However, Plaintiff does not claim that Koch participated in the investigation that generated the disciplinary charges against Plaintiff, recommended suspension or termination, directed retaliatory conduct, supervised the investigation concerning the IV-pump incident, or otherwise exercised authority over the employment decisions giving rise to Plaintiff's claims.

Significantly, Plaintiff's allegations place Koch's involvement after the disciplinary process had already commenced and after the investigative findings underlying Plaintiff's suspension and termination had been made. Participation in post-investigation review proceedings, standing alone, does not plausibly establish that Koch aided, abetted, incited, compelled, or coerced the allegedly discriminatory or retaliatory conduct itself. *See Dici*, 91 F.3d at 552–53; *Holocheck v. Luzerne County Head Start, Inc.,* 385 F. Supp. 2d 491, 497–98 (M.D. Pa. 2004). Thus, the Court dismisses Count II as to Koch.

### 3.  PHRA Claim Against Chantal Branco Survives

The allegations against Chantal Branco stand on different footing. Plaintiff alleges that Branco served as Director of Nursing, was informed of Plaintiff's complaints concerning race discrimination and disparate treatment, participated in meetings addressing those complaints, and was involved in investigations concerning Plaintiff's allegations. ECF No. 48 ¶¶ 97–140, 141–149. Plaintiff asserts that Branco participated in the investigation concerning the Heparin-drip incident that ultimately resulted in Plaintiff's suspension and termination, concluded that Plaintiff should be disciplined, and later participated in proceedings reviewing those decisions. *Id.* ¶¶ 144–149.

Unlike the allegations against Nester, White, and Koch, Plaintiff's allegations concerning Branco extend beyond supervisory status or awareness of Plaintiff's complaints. Plaintiff specifically alleges that Branco participated in the investigation underlying the challenged

disciplinary action and was personally involved in the process that led to Plaintiff's suspension and termination. Accepting those allegations as true and drawing all reasonable inferences in the Plaintiff's favor, the Court can reasonably infer that Branco knowingly participated in, directed, or acquiesced in the challenged employment actions. *See Dici,* 91 F.3d at 552–53; *Wirtz*, 2022 WL 970843, at *4–5.

Whether Branco acted with discriminatory or retaliatory animus, or merely performed legitimate supervisory functions, presents a question that cannot be resolved at the pleading stage. Thus, Defendants' Motion to Dismiss Count II is denied as to Branco.

### 4. PHRA Claim Against Stephanie Jones Survives

The Court likewise concludes that Plaintiff has stated a plausible PHRA aiding-and-abetting claim against Stephanie Jones. Plaintiff states that Jones became the Human Resources representative assigned to Plaintiff's complaints after Plaintiff escalated her concerns to senior leadership through the September 2023 memorandum. ECF No. 29 ¶ 33. Plaintiff further alleges that Jones informed her of the surveillance and investigations conducted before her suspension, communicated disciplinary decisions, served as Plaintiff's point of contact during the Fair Treatment process, and participated in matters relating to Plaintiff's employment status. ECF No. 48 ¶¶ 152–158, 160, 162–163.

As with Branco, Plaintiff's allegations concerning Jones extend beyond mere awareness of Plaintiff's complaints or generalized supervisory responsibility. Plaintiff alleges not merely that Jones communicated decisions made by others, but that she participated in administering the disciplinary process and exercised authority in matters affecting Plaintiff's employment status. Accepting those allegations as true, the Court can reasonably infer that Jones participated in or

12

knowingly acquiesced in the challenged employment actions. *See Dici*, 91 F.3d at 552–53; *Wirtz*, 2022 WL 970843, at \*4–5.

Defendants may ultimately demonstrate that Jones merely communicated decisions made by others and exercised no independent authority over Plaintiff's employment. At this stage, though, the Court must accept Plaintiff's allegations that Jones participated in administering and implementing the disciplinary process. Those allegations are sufficient to permit discovery. Accordingly, Defendants' Motion to Dismiss Count II is denied as to Jones.

In sum, Count II survives as to Branco and Jones, but fails as to Nester, White, and Koch. Because Plaintiff was previously allowed to amend after the Court identified the deficiencies in the allegations against Nester, White, and Koch and has failed to cure those deficiencies, dismissal of Count II as to those defendants is with prejudice.[3]

### d. Plaintiff's Age Discrimination Claim is Dismissed (Count VII)

Defendants argue that Plaintiff again fails to state a plausible claim for age discrimination under the Age Discrimination in Employment Act ("ADEA"). ECF No. 49-1, at 16–18. The Court agrees.

The ADEA prohibits employers from discriminating against employees who are at least forty years old because of their age. 29 U.S.C. § 623(a)(1). A claim of age discrimination under the ADEA survives a Rule 12(b)(6) motion to dismiss if the plaintiff "make[s] factual allegations that, if true, would either (1) establish [her] prima facie case […] or (2) show that age was the

---

[3] Further leave to amend is unwarranted because Plaintiff was previously advised of the deficiencies in her allegations against Nester, White, and Koch, afforded an opportunity to cure those deficiencies, and failed to do so. Plaintiff requests leave to file a Fourth Amended Complaint. The Court declines to grant further leave as to these claims because additional amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

'but-for' cause of the challenged adverse employment action." *Sorgini v. Wissahickon Sch. Dist.*, 274 F. Supp. 3d 291, 297 (E.D. Pa. 2017) (citing *Johnson v. Del. Cnty. Juv. Det. Ctr.*, No. 11-CV-1166, 2012 WL 895507, at *7 (E.D. Pa. Mar. 6, 2012)). Thus, the prima facie route is one sufficient path, but not the only path, to pleading sufficiency.

To establish a prima facie case under the ADEA, a plaintiff must show: (1) she is forty years of age or older; (2) the defendant took an adverse employment action; (3) she was qualified for the position; and (4) the circumstances of the adverse action give rise to an inference of unlawful discrimination. *See Giuliani v. Polysciences, Inc.*, 275 F. Supp. 3d 564, 575 (E.D. Pa. 2017). As the Third Circuit has articulated, the key inquiry is whether the adverse action was taken because of the plaintiff's age. *See Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (emphasis added). The fourth element may be satisfied by showing that the plaintiff was replaced by a substantially younger employee or by alleging facts that, if unexplained, are more likely than not based on impermissible factors. *Gardner v. Ulta Salon Cosms. & Fragrance Inc.*, No. 22-2785, 2024 WL 1110384, at *1 (3d Cir. Mar. 14, 2024); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

In its February 25, 2026, Memorandum Opinion, the Court dismissed Plaintiff's age-discrimination claim because the SAC failed to satisfy the first and fourth elements of the prima facie case. ECF No. 44 at 16–17. She failed to state her age outright and alleged only isolated age-related remarks and generalized assertions that younger nurses received more favorable treatment. ECF No. 44 at 17–18. Therefore, the Court concluded that Plaintiff failed to allege facts plausibly connecting her suspension or termination to age-based animus. *Id.*

The TAC does not materially expand upon the allegations that the Court previously found insufficient. Plaintiff continues to rely primarily upon allegations that coworkers referred to her

14

as an "old lady," suggested she was "too old" for certain activities, and made other age-related remarks. ECF No. 29 ¶¶ 182–189. The TAC contains no additional factual allegations plausibly linking those remarks to the disciplinary investigation, suspension, or termination challenged in this action. Nor does the TAC plausibly allege that the individuals responsible for the challenged employment decisions acted because of Plaintiff's age. Although age-related comments may provide relevant context in some circumstances, the TAC contains no factual allegations connecting those remarks to the decision-makers responsible for Plaintiff's suspension or termination.

Moreover, Plaintiff's allegations concerning the events leading to her suspension and termination focus overwhelmingly on race discrimination, retaliation, workplace complaints, and the investigation into her documentation practices rather than age-based discrimination. Unlike Plaintiff's race-discrimination claim, the TAC does not identify younger employees who engaged in comparable conduct but received more favorable treatment, nor does it allege facts supporting a reasonable inference that age played any role in the disciplinary decisions at issue.

Taken as a whole, the TAC fails to allege facts sufficient to establish a prima facie case of age discrimination, nor facts permitting a reasonable inference that age was the but-for cause of the challenged employment actions. For these reasons, Defendants' Motion to Dismiss Count VII is granted.[4]   Because the Court previously identified these deficiencies and Plaintiff has

---

[4] The Court notes that Plaintiff does not respond to Defendants' arguments concerning Count VII. Although that failure provides an independent basis for treating the claim as abandoned, dismissal is warranted on the merits in any event. *See Seals v. City of Lancaster,* 553 F. Supp. 2d 427, 432 (E.D. Pa. 2008); *Lawson v. City of Coatesville,* 42 F. Supp. 3d 664, 677–78 (E.D. Pa. 2014); *see also D'Angio v. Borough of Nescopeck*, 34 F. App'x 141, 145 (3d Cir. 2002); *Mator v. Wesco Distribution, Inc.,* 598 F. App'x 78, 81 (3d Cir. 2015).

failed to cure them through amendment, Count VII is dismissed with prejudice.[5]

## IV.    CONCLUSION

For the foregoing reasons, Moving Defendants' Motion to Dismiss (ECF No. 49) is granted in part and denied in part. Specifically, Defendants' Motion is denied as to Count I; denied as to Count II with respect to Chantal Branco and Stephanie Jones; granted as to Count II with respect to Brian Nester, Annette White, and Jodi Koch; granted as to Count VII; and the Court's prior dismissal without prejudice of all claims against Lynn K. Turner remains undisturbed. The claims previously permitted to proceed by the Court's February 25, 2026, Memorandum Opinion remain unaffected by the present ruling.

An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

[5] The Court previously identified the deficiencies in Plaintiff's age-discrimination allegations and granted leave to amend. Plaintiff requests leave to file a Fourth Amended Complaint. Because the TAC adds no material factual allegations curing those deficiencies, further amendment would be futile. *See Foman*, 371 U.S. at 182; *Grayson*, 293 F.3d at 108; *Lorenz*, 1 F.3d at 1414.